UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS GASTON, | : | Case No. 3:24-CV-1973 (SVN) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| CUERVO, *et al.*, | : | |
| *Defendants*. | : | May 16, 2025 |

### INITIAL REVIEW ORDER

*Pro se* plaintiff Marcus Gaston, a sentenced[1] inmate currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"), filed this action pursuant to 42 U.S.C. § 1983. He names four defendants: Officer of Intelligence Cuervo, Captain Paposha, Disciplinary Hearing Officer Lieutenant Davis, and Grievance Coordinator John Doe. Compl., ECF No. 1 at 1–2. Plaintiff alleges that he was "found guilty" of a security risk group ("SRG") affiliation "without proper investigation of the facts." *Id*. at 5. Construing Plaintiff's complaint liberally, he asserts that his Fourteenth Amendment due process rights were violated because he received a disciplinary infraction for a SRG affiliation and was classified and placed in the SRG program at MacDougall without sufficient evidence and sufficient process. Plaintiff seeks monetary damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on September 10, 2014, to a term of imprisonment of fifteen years, and that Plaintiff is incarcerated at MacDougall-Walker CI. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=365101 (last visited May 16, 2025). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

## I. BACKGROUND

### A. Connecticut Department of Correction Administrative Directives

The Court takes judicial notice of various Administrative Directives promulgated by the Connecticut Department of Correction ("DOC"). *See Chambers v. Johnpierre*, No. 3:14-cv-1802 (VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016); *Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of DOC's Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities").

Administrative Directive 9.2, titled "Offender Classification," allows the DOC to classify inmates "to the most appropriate assignment for security and treatment needs to promote effective

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

population management . . . ." Administrative Directive 6.14, titled "Security Risk Groups,"[3] contains the description of a SRG program that allows for prisoners who are suspected of certain gang affiliations to be placed in more restrictive conditions of confinement. Lastly, Administrative Directive 9.5, titled, "Code of Penal Discipline," contains a charge for Security Risk Group Affiliation.[4] Directive 6.14 states that "[a]n inmate shall also be designated as a Security Risk Group Member when the inmate is found guilty of the charge of Security Risk Group Affiliation in accordance with Administrative Directive 9.5, Code of Penal Discipline."

B. Plaintiff's Allegations

The facts alleged in Plaintiff's complaint, ECF No. 1, are accepted as true for purposes of initial review only.

On January 11, 2024, Plaintiff was issued a SRG affiliation "ticket" based on "having [a] history [with] this Muslim sect called the Black P. Stone Nation." ECF No. 1 at 4. On January 23, 2024, Plaintiff pleaded not guilty, but was found guilty. Id. On the same day, Plaintiff told Disciplinary Hearing Officer Lieutenant Davis that "Black P. Stone started as a gang, but the leader, Eventually [sic] changed it into a Muslim sect and destroyed the gang mentality of this group"; that Black P. Stone could not be considered a "Blood gang," because Black P. Stone started in the early 1960s, and "Blood" started in the early 1970s; and that he was not, and never had been, a gang member, and that Plaintiff "got this information out of a Book and [he] should not be [deemed] affiliated" with Black P. Stone. Id. at 4–5. Plaintiff asserts that "Black P. Stone is not a subset of Bloods" and that he "was found guilty without proper investigation of the facts." Id.

---

[3] See Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/DOC/AD/AD-Chapter-6 (last visited on May 16, 2025).
[4] See Connecticut State Department of Correction, Administrative Directive 9.5 (Code of Penal Discipline), available at https://portal.ct.gov/doc/ad/ad-chapter-9 (last visited on May 16, 2025).

3

Plaintiff states that he appealed the decision but "did not receive the appeal back." *Id.* at 5. Plaintiff seeks monetary damages and injunctive relief, asking "to get out of Security Risk Group units." *Id*.

## II. DISCUSSION

Construing Plaintiff's complaint liberally, he appears to assert that he received a disciplinary charge for a SRG affiliation and was placed in the SRG classification program without sufficient procedure and sufficient evidence, in violation of his rights under the due process clause of the Fourteenth Amendment. Plaintiff does not specify whether he brings his claims against Defendants in their individual and/or official capacity. But because he seeks monetary damages and injunctive relief, the Court infers that Plaintiff brings this suit against Defendants in both their individual and official capacities. The Court addresses Plaintiff's individual capacity claims and official capacity claims in turn.

### A. Plaintiff's Individual Capacity Claims

When a plaintiff brings a suit against a defendant in his or her individual capacity, the plaintiff seeks to impose personal liability upon a government official for actions he takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165, (1985). Accordingly, when a plaintiff seeks monetary damages from a defendant, he or she must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (concluding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

4

Here, Plaintiff has not alleged any facts about conduct by Defendants Officer of Intelligence Cuervo, Captain Paposha, or Grievance Coordinator John Doe. Because Plaintiff has failed to address whether Defendants Officer of Intelligence Cuervo, Captain Paposha, or Grievance Coordinator John Doe were personally involved in the alleged constitutional violation, Plaintiff may not proceed on any claim for monetary damages against these Defendants. Should Plaintiff be able to provide factual allegations regarding the personal involvement of these Defendants, and should Plaintiff elect to pursue the option outlined below of filing an amended complaint, Plaintiff may include any such allegations in the amended complaint.

Plaintiff does, however, sufficiently allege personal involvement by Defendant Lieutenant Davis, albeit barely. Plaintiff alleges that he pleaded not guilty and that on January 23, 2024, he was found guilty. Plaintiff also alleges that on January 23, 2024, he told Defendant Davis, a disciplinary hearing officer, that Black P. Stone does not have a "gang mentality" and that it is "not a Blood gang." Accordingly, the Court finds that Plaintiff has provided sufficient factual allegations for the Court to make the reasonable inference that Plaintiff is alleging that Defendant Davis was the hearing officer who found Plaintiff as having a security risk group affiliation. The Court next considers whether Plaintiff has alleged a plausible Fourteenth Amendment due process violation against Lieutenant Davis and concludes that he has.[5]

### B. Fourteenth Amendment Due Process Claim

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Procedural due process analysis

---

[5] While the Eleventh Amendment permits a plaintiff to seek damages against defendants in their individual capacities, claims for injunctive relief may not be asserted against defendants in their individual capacities, as they would not have the authority to provide such relief in that capacity. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, No. 3:18-cv-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020).

"proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (per curiam).

### 1. Liberty Interest

The Due Process Clause of the Fourteenth Amendment, in and of itself, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 228 (1976) (finding no protected liberty interest in freedom from intrastate prison transfer, even to a maximum security facility, because prison officials have discretion to transfer prisoners "for whatever reason or for no reason at all"). Nevertheless, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement. *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Thus, to assess Plaintiff's claim, the court must first determine whether Plaintiff's confinement in the SRG Program constitutes an atypical and significant hardship.

In determining what constitutes an "atypical and significant hardship," courts consider "[b]oth the conditions [of confinement] and their duration . . . harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citation omitted). Accordingly, there is no bright line rule that dictates when a specific period of segregative confinement automatically

implicates or fails to implicate due process rights. *See id*. However, where a "detailed factual record" is absent, the Second Circuit has only affirmed dismissal of due process claims in cases where the period of time spent in restrictive housing "was exceedingly short—less than 30 days," and where "there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Velez-Shade v. Population Mgmt.*, No. 3:18-CV-1784 (JCH), 2019 WL 4674767, at *10 (D. Conn. Sept. 25, 2019).

Plaintiff alleges that in January of 2024, he was "hit with a security risk group affiliation ticket" and "was found guilty" on January 23, 2024. ECF No. 1 at 4. Plaintiff filed this action on December 12, 2024, and at the time he filed this action, he requested "to get out of security risk group units." *Id*. at 5. Although Plaintiff does not describe his conditions confinement in the SRG Program, the Court may draw a reasonable inference that Plaintiff is alleging that he has been in the SRG program from January through December of 2024, for over 300 days. According to Directive 6.14, inmates who are designated as SRG members are not eligible for extended family visits or furloughs, *see* Directive 6.14(11)(B) & (E); are not permitted restoration of forfeited good time, *see id.* 6.14(11)(F); are not permitted to earn or restore Risk Reduction Earned Credit, *see id.* 6.14(11)(G); and are subjected to certain restrictions relating to movement within the prison, *see id.* 6.14(11)(N); and are subjected to certain limitations with respect to visits, *see id.* 6.14(11)(V). Additionally, SRG members in certain phases of the program are only permitted to have immediate family members as active visitors on their visiting lists. *Id.* 6.14(11)(V).

Accordingly, for purposes of initial review, the Court considers Plaintiff's allegations sufficient to demonstrate an "atypical and significant hardship," thereby establishing a liberty interest in his disciplinary SRG affiliation charge and SRG classification. *See Sandin*, 515 U.S. at 484; *Velez-Shade v. Population Mgmt.*, 2019 WL 4674767, at *11–12 (analyzing DOC directives

7

and recognizing liberty interest in SRG classification); *Walker v. Doe 1*, No. 3:23-cv-1469 (SVN), 2024 WL 406299, at *4 (D. Conn. Feb. 2, 2024) (recognizing that "courts in this district have found that inmates have a liberty interest in their SRG classification"); *Wicker v. Papoosha*, No. 3:24-cv-1640 (VAB), 2025 WL 744273, at *5 (D. Conn. Mar. 7, 2025) (recognizing same).

### 2. Process Due

Having concluded that Plaintiff has plausibly alleged a liberty interest in his charge for a SRG affiliation and SRG classification, the Court next assesses whether the procedures followed by the State were "constitutionally sufficient." *Cooke,* 562 U.S. 216 at 219.  The process due for an inmate facing restrictive segregation depends on whether the basis for the decision is administrative or punitive. *See Jusino v. Rinaldi*, No. 3:18-CV-2004 (MPS), 2019 WL 2720763, at *5–6 (D. Conn. June 27, 2019); *Fowler v. Dep't of Corr.*, No. 3:17-CV-848 (JAM), 2019 WL 1025243, at *5 (D. Conn. Mar. 4, 2019); *Johnston v. Maha*, 845 F. Supp. 2d 535, 538 (W.D.N.Y. 2012).  Where the inmate's detention in restrictive confinement is administrative, such as SRG classification, his confinement is assessed pursuant to the standard set forth in *Hewitt v. Helms*, 459 U.S. 460 (1983).  *See Jusino*, 2019 WL 2720763, at *6.  Under *Hewitt*, the inmate must receive "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt*, 459 U.S. at 476.  To satisfy due process, the non-adversary proceeding must occur "within a reasonable time following the inmate's transfer to administrative segregation," and the decisionmaker must review the charges and then-available evidence against the inmate. *Jusino*, 2019 WL 2720763, at *6.

Where the placement in restrictive confinement was disciplinary in nature, the inmate is entitled to more procedural protections under *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 572

8

(1974). *See Fowler*, 2019 WL 1025243, at *5 (concluding that the process due for a prisoner facing administrative segregation is "lower" than the process due an inmate who faces a disciplinary hearing). These protections include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense; and (3) a written statement explaining the decision and the reasons for the action being taken. *Id.*

### a. Sufficiency of Process

As noted above, Plaintiff appears to challenge the sufficiency of process and sufficiency of evidence used to find he was guilty of a SRG affiliation and to classify him as a SRG member. As to Plaintiff's challenge to sufficiency of process, Plaintiff does not provide enough factual allegations for the Court to conclude that he has plausibly showed a deprivation of process. While Plaintiff implies that he was given a disciplinary hearing on January 26, 2024, he does not allege whether: (1) he received a disciplinary report in connection with his SRG designation or notice of the charges against him; (2) his placement in the SRG Unit was disciplinary in nature; (3) any sanctions were imposed because he was found guilty of being affiliated with a SRG; (4) he received notice of the disciplinary hearing; (5) he was allowed to present witness testimony on his behalf; (6) he was provided the opportunity to review the evidence against him, if any; and (7) he received any written explanation of the decision. Because Plaintiff has failed to allege sufficient information as to the procedures that were used to determine his SRG affiliation and placement, the court cannot evaluate his claim for insufficient process against Lieutenant Davis, and this claim is dismissed.

### b. Sufficiency of Evidence

As to Plaintiff's challenge to the sufficiency of evidence used to determine his SRG

affiliation and placement, the Supreme Court has made clear that, in order to "meet the minimum requirements of procedural due process," a prison hearing officer's finding must be supported by "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454; *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (applying the "some evidence" standard to an administrative proceeding). This standard is very lenient, as "any evidence in the record that could support the conclusion" reached by the decisionmaker will suffice. *Superintendent*, 472 U.S. at 455–56. In so holding, the Supreme Court acknowledged that "prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances," and noted that "[r]equiring a modicum of evidence to support a decision . . . will help to prevent deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455–56. At the same time, however, the standard is not meaningless and requires that the evidence be "reliable." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).

Plaintiff alleges that he was issued a SRG affiliation "ticket" based on his history with "Black P. Stone Nation," and that he was "found guilty without proper investigation of the facts." ECF No. 1 at 4–5. In this way, Plaintiff alleges that his SRG designation was made without the support of reliable evidence. Plaintiff's other allegations relating to his assertions that he was never affiliated with a gang, at this stage, also plausibly suggest that his designation was not supported by some reliable evidence. As described above, although Plaintiff does not explicitly allege the extent of Lieutenant Davis's involvement in his disciplinary charge for SRG affiliation and the decision to place him in the SRG program, the Court may draw a reasonable inference that Lieutenant Davis, as a hearing officer, had some role to play in these decisions. Therefore, the Court will permit Plaintiff's claim to proceed against Lieutenant Davis for further development

for violation of Plaintiff's due process rights under the Fourteenth Amendment for insufficient evidence as to Plaintiff's disciplinary charge for SRG affiliation and SRG classification.

### C. Plaintiff's Official Capacity Claims

Plaintiff's complaint does not explicitly indicate that he seeks relief against Defendants in their official capacities. Plaintiff does, however, seek an injunctive order removing him from SRG classification and returning him to the general population. ECF No. 1 at 5.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165–66 (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55 (1978)). To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Graham*, 473 U.S. at 169.

A plaintiff may proceed against a defendant in his or her official capacity for injunctive or declaratory relief only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). A "plaintiff's claim for injunctive relief does not require personal involvement, as required for a damages claim." *Branch v. Guadarrama*, No. 3:24-CV-00536 (MPS), 2024 WL 3342991, at *5 (D. Conn. July 9, 2024); *see also Smith v. Muccino,* 223 F.Supp.2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity."); *Hall v. Marshall*, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007). A claim for injunctive relief, however, can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-CV-1758 (VAB), 2020 WL 2307643, at *6 (D. Conn. May 8, 2020).

Here, Plaintiff's request for reclassification and return to the general population indicates that he remains subject to alleged constitutional violations while he remains housed in the SRG Unit. He has therefore alleged an ongoing constitutional violation. Given that there are no factual allegations in the complaint concerning Defendants Officer of Intelligence Cuervo, Captain Paposha, and Grievance Coordinator John Doe, however, the Court is unable to conclude that any of these Defendants would have the authority to grant the prospective relief that Plaintiff seeks.

The Court assumes, without deciding, that Lieutenant Davis, as the disciplinary hearing officer, would have such authority.[6] Accordingly, the Court will permit Plaintiff to proceed against Lieutenant Davis only in his official capacity on his request for injunctive relief. Should Plaintiff elect to pursue the option outlined below of filing an amended complaint, he may include more factual allegations regarding the authority of the dismissed Defendants to grant the requested injunctive relief.

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his Fourteenth Amendment due process claim for insufficient evidence pertaining to his SRG affiliation disciplinary charge and classification proceeding against Defendant Lieutenant Davis in his individual capacity.

Plaintiff may also proceed on his Fourteenth Amendment due process claim for prospective injunctive relief against Lieutenant Davis in his official capacity.

The Court **DISMISSES** the following claims: Plaintiff's Fourteenth Amendment due process claim against Defendants Officer of Intelligence Cuervo, Captain Paposha, and Grievance Coordinator John Doe in their individual capacities and official capacities.

---

[6] Davis remains free to challenge this assumption at an appropriate stage of the litigation.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)  If Plaintiff wishes to proceed on his Fourteenth Amendment procedural due process claim for insufficient evidence against **only** Lieutenant Davis, in his individual and official capacity, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **June 16, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on **only** Defendant Lieutenant Davis in his individual and official capacity.

(2)  Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted that have been dismissed above without prejudice, in order to attempt to state a viable claim, he may file an amended complaint by **June 16, 2025**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process of any defendants named therein. If Plaintiff elects to file an amended complaint, the original complaint that this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **June 16, 2025**, the Court will presume that Plaintiff wishes to proceed on the original complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**<u>Changes of Address.</u>**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d) provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.

Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**SO ORDERED** at Hartford, Connecticut, this 16th day of May, 2025.

                                   */s/ Sarala V. Nagala*
                                   SARALA V. NAGALA
                                   UNITED STATES DISTRICT JUDGE